JOHNSON *v.* UNION SWITCH & SIGNAL CO.

*(Superior Court of New York City, General Term.* March 2, 1891.)

1. CONTRACTS—TERMINATION—ACTION FOR BREACH.

A contract between plaintiff and defendant company, whereby, in consideration of the assignment of certain inventions, plaintiff was appointed manager of defendant at a salary of $5,000, and to be paid $3,000 per year as royalty, and 10 per cent. of net profits, provided that the contract should continue for 10 years, subject, after two years, to termination by either party on one year's notice, or by the death or incapacity of plaintiff, and that in the event of termination the "company [by reason of the expenditures that shall have been made during the continuance of this agreement] shall have a license [not exclusive] to use all inventions that may have been used in carrying on the business of the company on the payment of $6,500 per year, said sum to be paid quarterly." *Held,* that the contract was not "terminated" by the discharge of plaintiff from defendant's service without cause, and no action would lie thereon for the payment of the $6,500 royalty.

2. CORPORATION—CONTRACTS—AUTHORITY OF PRESIDENT.

An admission by defendant's president, made on such discharge, that the royalties would be paid, would not bind defendant, in the absence of evidence that he was authorized by the company to make such promise or put such construction on the contract.

3. JUDGMENT—RES JUDICATA.

A judgment in an action for a quarterly payment under a contract, recovered by an assignee of the payee party thereto, is not admissible in evidence as *res judicata* as to defendant's general liability under the contract in an action by the assignor to recover a subsequent quarterly payment.

Exceptions from jury term.

Charles R. Johnson sued the Union Switch & Signal Company. The complaint was dismissed, and exceptions ordered to be heard at general term.

Argued before SEDGWICK, C. J., and TRUAX, J.

*George W. Miller,* for plaintiff. *John W. Houston,* for defendant.

PER CURIAM. The action was upon a written contract between the parties to the action. It provided: (1) That plaintiff be made general manager of the defendant. (2) That he receive $5,000 each year as salary. (3) That he thereby granted, sold, and conveyed to the said company, except as thereinafter provided, the exclusive right to the use of all the inventions of the plaintiff relating to the signal business that he then had, or might thereafter acquire, and also the right to use certain inventions designated. (4) That the company pay for the use of the inventions $3,000 each year, in quarterly payments. (5) That one Henry Johnson be employed. (6) That the plaintiff, in addition to the other compensations to him, receive 10 per cent. of net profits. (7) It is mutually agreed that this contract shall continue for a period of 10 years, subject to termination by either party, however, by one year's notice in writing to the other party, at any time after the second year, or by the death of Charles R. Johnson, or by his permanent inability to perform his duties as general manager. (8) It is further mutually covenanted and agreed that, in the event of the termination of this agreement, the said company (by reason of the expenditures that shall have been made during the continuance of this agreement) shall have a license (not exclusive) to use all of the inventions that may have been used in carrying on the business of the company, on the payment of $6,500 per year, said sum to be paid quarterly; and shall be entitled to purchase, from Charles R. Johnson or his executors, the exclusive right to use all of the said inventions upon as favorable terms as he or his executors may be willing to grant to any other parties. (9) That the agreement shall take effect from June 1, 1886. And (10) that, in the event of the business of the company being terminated by circumstances over which its officers have no control, the contract should be null and void, and the license to use the inventions referred to should cease, and all rights therein should revert to the plaintiff. The action was for a quarterly payment under the eighth section of the contract. The plaintiff claimed that there had been

a termination of the contract, within the meaning of that section, caused by a breach of the contract on defendant's part in discharging without cause the plaintiff from its service.  The defendant took the position that the termination meant was such as had been provided for in the earlier part of the contract in its seventh section.  If there were no break between the sections, and the word "eighth" omitted, by reading the two sections together, as if they were one, it would be clear that the words "continue" and "terminate," of the early part of the section, referred to the same condition that is indicated by the words "termination" and "continuance," of the latter part of the section.  There was no necessity of using "said" or "aforesaid."  The words having been once used, and nothing intervening to indicate a purpose to change the meaning, a repetition of the words is a repetition of the meaning.  The construction of the plaintiff involves the following reading: That, in the event of a breach of this agreement by the company, the company shall have a license (not exclusive) to use, etc.  A contract should not be construed so as to provide, in its executory aspects, for bringing about its breach, if it be possible to avoid such construction.  Such a construction would involve the idea that by the eighth section the plaintiff intended to offer to the defendant a motive to discharge him.  The eighth section, in its provisions, shows what was meant in the use of the words "termination of this agreement.".  Immediately after these words is the clause in parenthesis "(by reason of the expenditures that shall have been made during the continuance of this agreement.)"  The termination was to be at the end of the intended continuance.  The expenditures were such as would be made through 10 years, or, if notice were given, through three years.  Such was the consideration to the plaintiff for making the license.  If his discharge would make the provision operative, then it might be a discharge at the end of a day's service, as well as at the end of a year's service; as well when a few dollars had been expended as when several hundred dollars had been.  At the end of a day's service many inventions might have been used for the business of the company or only one.  If a breach by discharge terminated the contract, then by the eighth section, if the defendant used that one invention, it would be bound to pay $6,500 a year, which was intended by the parties to be the compensation for the use of all the inventions that might be employed in the company's business through 10 years.  There appearing to be no reason for the use of the word "termination" in the eighth section in any other sense than that of the words "continue" and "terminate" in the seventh section, it must be held that a breach of the contract by the defendant did not terminate the contract within the meaning of the eighth section.  It does not follow from this that if it used, as the complaint avers it did, after plaintiff's discharge, the inventions of plaintiff that had been used in the business, the plaintiff will be deprived of a valuable property right without compensation, for the defendant is liable for the value of that use.  The answer, taking all its averments together, does not admit that there was a termination of the contract as provided for in the eighth section.

It is claimed that a judgment roll offered by plaintiff was improperly excluded.  It was in an action against this defendant brought by one Miller, as the assignee of the present plaintiff, of a quarterly payment, under section 8.  In that action Miller recovered.  It is urged that the judgment was a final adjudication, as to the parties to this action, of the issue of whether the present defendant was liable under section 8.  The fact that the action was not between the same parties is a valid objection to the judgment roll as evidence, unless the objection is obviated by considerations growing out of the rules of estoppel.  It is said that the parties to this action are in privity with the parties to the former action.  Of course there is no privity, so far as the defendant is concerned, because it was a party.  As to the present plaintff being in privity with the former, it could rest only on their relation as as-

signor and assignee. While there may be a privity of estate or of title, there is none as respects the judgment, in favor of the present plaintiff. If there were, it would bind them mutually to the estoppel growing out of the relation, and if the plaintiff of the former action had been defeated, as to a single quarterly payment under the contract, the present plaintiff would be bound by it, and would have no action against the defendant for the other installments. But the present plaintiff is not bound by the estoppel, because he did not gain his interest after the so-called "estoppel" came into existence. In no sense did the plaintiff of the former action represent the present plaintiff. Nor is the present defendant in the position of one who takes a right burdened with what will constitute an estoppel, for all its rights, as presented in this action, were in existence prior to the judgment. The defendant is not estopped by the judgment, inasmuch as it does not claim through one who is estopped by it. 2 Smith, Lead. Cas. 664, 665; *Carver* v. *Jackson*, 4 Pet. 83; *Campbell* v. *Hall*, N. Y. 575. The judgment roll was correctly excluded. Certain pleadings in actions between the present parties were given in evidence. It is urged by the plaintiff that, as in them, the defendant admitted and averred a "wrongful termination of the contract," that was an admission of the termination which put in operation the provisions of the eighth section. This, however, is opposed to the views that have been expressed as to the construction of that section. At the time the plaintiff was discharged by the president of the company, the plaintiff said to him: "Of course, you will pay me the $6,500 a year royalty;" and was answered: "Yes, oh, yes; we shall pay the royalties." There was no evidence that the president was authorized by the company to make this promise for it, or to put a construction upon the contract that had been made. The exceptions are overruled, and judgment ordered for defendant, upon the direction that complaint be dismissed, with costs.